IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSCHMANN STEEL & GLASS CONSTRUCTIONS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> ERNEST BOCK & SONS-DOBCO JOINT VENTURE, et al., <br><br> *Defendants.* | CIVIL ACTION <br> NO. 25-2848 |

**Pappert, J.**                                                                                                    November 13, 2025

**MEMORANDUM**

Roschmann Steel & Glass Constructions sued Ernest Bock & Sons-Dobco[1] alleging two breach-of-contract claims. EBSD moves for an order under the local rules of civil procedure requiring the parties to mediate both claims. The Court grants the motion.

I

In August of 2021, EBSD agreed to serve as the general contractor for Montgomery County's "Justice Center" project. (Compl. ¶ 13, Dkt. No. 1.) The contract required EBSD to oversee the construction of a new building connected to the County's courthouse. *See* (*id.* ¶¶ 1–2, 13). EBSD later subcontracted with Roschmann for "glass design and installation work." (*Id.* ¶ 4.) The subcontract requires Roschmann and EBSD to mediate before litigation. "Claims, disputes, or other matters in controversy

---

[1]      EBSD is a joint venture formed by two corporations, Ernest Bock & Sons, Inc. and Dobco, Inc. (Compl. ¶¶ 7–9, Dkt. No. 1.) Roschmann sued Ernest Bock & Sons, Dobco and EBSD. (*Id.*) The claims against Ernest Bock & Sons and Dobco, however, are derivative—those corporations are liable for any breach of contract by EBSD. (*Id.* ¶¶ 89–106.)

1

arising out of or related to this Subcontract . . . shall be subject to mediation as a condition precedent to the institution of legal or equitable proceedings by either party." (Subcontract at 15, Dkt. No. 1-1.)  Any "request for mediation shall be made in writing, delivered to the other party to this Subcontract and filed with the American Arbitration Association [AAA] unless the parties mutually agree in writing to a substitute mediation administrator."  (*Id.*)  For "any claim subject to, but not resolved by mediation" the parties may turn to "litigation."  (*Id.*)

A series of disputes arose under the subcontract.  Roschmann alleges EBSD failed to pay invoices, resolve stop-work orders, approve design and change-order requests, and improperly withheld retainage.  *See* (Compl. ¶¶ 5, 40, 45, 49–58, 74).  Roschmann's costs allegedly increased by nearly $700,000.  *See* (*id.* ¶ 62).

In January of 2024, Roschmann requested mediation with the AAA and notified EBSD.  (*Id.* ¶¶ 76–77.)  But instead of attending mediation, the parties "agreed to attend" private negotiations, which resulted in the "Liquidating Agreement."  (*Id.* ¶¶ 78–79.)  The agreement covered four matters: (1) invoices, (2) retainage, (3) change-order requests and (4) back charges.  (Liquidating Agreement at 1–7, Dkt. No. 1-4.)

Roschmann alleges EBSD also failed to comply with the liquidating agreement.  Specifically, Roschmann claims EBSD never approved certain change-order requests or released retainage.  (Compl. ¶¶ 85–86.)  In May of 2025, the parties again attempted to settle their disputes by negotiation, but couldn't reach agreement.  (*Id.* ¶ 88.)

Roschmann now asserts claims against EBSD for breach of the subcontract and the liquidating agreement.  (*Id.* ¶¶ 89–106.)  EBSD seeks an order under Local Rule of Civil Procedure 53 requiring the parties to mediate both claims.

2

II

A court may "us[e] special procedures to assist in resolving the [case] when authorized by statute or local rule." Fed. R. Civ. P. 16(c)(2)(I). This "acknowledges the presence of . . . local rules . . . that . . . authorize [the] use of [alternative dispute resolution] procedures even when not agreed to by the parties." Fed. R. Civ. P. 16(c) advisory committee's note to 1993 amendment. Thus, a local rule may authorize a court to order the parties to "participate" in "non-binding mediation conducted by a private mediator." *In re Atl. Pipe Corp.*, 304 F.3d 135, 138 (1st Cir. 2002); *see also United States v. Ridley's Fam. Mkts., Inc.*, 525 F. Supp. 3d 1355, 1357 (D. Utah 2021); *Pa. Skill Games, LLC v. Action Skill Games, LLC*, No. 20-1177, 2021 WL 243038, at *3 (W.D. Pa. Jan. 25, 2021); *In re Afr.-Am. Slave Descendants' Litig.*, 272 F. Supp. 2d 755, 758 (N.D. Ill. 2003). In the Eastern District of Pennsylvania, Local Rule of Civil Procedure 53.3 permits courts to "order[] the litigants to participate in an ADR process," including "mediation." Loc. R. Civ. P. 53.3(b), (d). Generally, a district court has discretion in deciding whether to order mediation under a local rule. *Abele v. Hernando County*, 161 F. App'x 809, 813 (11th Cir. 2005) (per curiam). A court should exercise this discretion only "as a way of managing the litigation before it." *Ridley's Fam. Mkts., Inc.*, 525 F. Supp. 3d at 1357.

A

EBSD first asks the Court to order the parties to mediate Roschmann's subcontract claim. The Court will do so because Roschmann cannot enforce the subcontract in court until the parties attend mediation.

To prove breach of contract under Pennsylvania law, a plaintiff must show (1) a contract, (2) its breach and (3) resulting damages. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). If the "parties to a contract . . . create [a] valid condition[] precedent to the right to bring an action on the contract," a "claim will not . . . accrue until the condition has been performed." *Allen N. Lashner, Inc. v. Dep't of Highways*, 275 A.2d 403, 405 (Pa. Commw. Ct. 1971).

Roschmann and EBSD created a condition precedent to litigation in the subcontract: "Claims, disputes, or other matters in controversy arising out of or related to this Subcontract . . . shall be subject to mediation as a condition precedent to the institution of legal or equitable proceedings by either party." (Subcontract at 15.) The "parties shall endeavor to resolve their [c]laims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association." (*Id.*) Any "request for mediation shall be made in writing, delivered to the other party to this Subcontract and filed with the American Arbitration Association unless the parties mutually agree in writing to a substitute mediation administrator." (*Id.*) The parties "shall share the mediator's fee and any filing fees equally." (*Id.*) For "any claim subject to, but not resolved by mediation" the parties may resort to "litigation." (*Id.*) Taken together, this language "makes it clear that mediation must occur prior to instituting litigation." *A.T. Chadwick Co. v. PFI Constr. Corp.*, No. 01998, 2004 WL 2451372, at *3 (Pa. Ct. Com. Pl. July 27, 2004).

Mediation is a "method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." *Mediation*, Black's Law Dictionary (12th ed. 2024); *see also Southard v. Newcomb Oil*

4

*Co.*, 7 F.4th 451, 455 (6th Cir. 2021) (noting that "mediation" is "overseen by a neutral third party"). Roschmann and EBSD have not participated in any nonbinding dispute resolution process involving a neutral third party to assist in reaching a mutually agreeable solution. Thus, the condition precedent to litigation has not been satisfied.

Roschmann counters that the condition precedent "does not require the parties to engage a third-party neutral." (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings and/or to Compel Mediation at 11, Dkt. No. 31.) But mediation—by definition—involves a third-party neutral. The structure of the condition precedent confirms the point. The mediation "shall be administered by the American Arbitration Association," unless the parties agree to a substitute mediation administrator. (Subcontract at 15.) And the parties "shall share the mediator's fee and any filing fees equally." (*Id.*) Because the condition precedent explicitly requires the parties to use a *mediator—i.e.*, a "neutral person who tries to help disputing parties reach an agreement," *Mediator*, Black's Law Dictionary, *supra*—it is clear that mediation does not include private negotiations.

Roschmann next says it complied with certain language in the condition precedent: The "parties shall *endeavor* to resolve their [c]laims by mediation." (Subcontract at 15) (emphasis added.) Roschmann contends it "endeavored" to resolve its subcontract claim by mediation when it filed a request with the AAA and notified EBSD. But, as explained, the condition precedent "makes it clear that mediation must occur prior to instituting litigation." *A.T. Chadwick Co.*, 2004 WL 2451372, at *2. Here, no mediation occurred. After Roschmann requested mediation, "*the parties agreed* to attend a private" negotiation session. (Compl. ¶ 78) (emphasis added.) Also,

5

the subcontract's "endeavor" language is best understood as instructing the parties to make good-faith efforts to actually resolve their claims through mediation. And if mediation does not resolve the claims, the parties may resort to litigation.

Lastly, Roschmann claims EBSD prevented mediation. If "one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure." *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 634 (3d Cir. 1998); *Arlotte v. Nat'l Liberty Ins.*, 167 A. 295, 296 (Pa. 1933). To succeed under the so-called prevention doctrine, Roschmann must prove EBSD unilaterally prevented mediation. *Shumaker v. Lear*, 345 A.2d 249, 252 (Pa. Super. Ct. 1975). This requires Roschmann to show EBSD "wrongfully hindered performance of the condition." 13 Williston on Contracts § 39:9 (4th ed.), Westlaw (database updated May 2025); *Shumaker*, 345 A.2d at 252.

Roschmann points to paragraph 78 of its complaint. But that paragraph alleges only that after Roschmann notified EBSD of its request to mediate, "*the parties agreed* to attend a private" negotiation session. (Compl. ¶ 78) (emphasis added.) This does not show EBSD unilaterally prevented, or wrongfully hindered, mediation.

Roschmann next says that it offered to mediate both of its claims with EBSD in August and EBSD rejected the offer, thereby preventing mediation. That telling of the story, however, leaves out some details. In August, Roschmann asked EBSD to mediate within thirty days (presumably by the end of September). *See* (Letter from Jacob Kearney to Court at 1–2, Dkt. No. 24). EBSD countered, offering to mediate within ninety days (presumably by the end of November). *See* (*id.* at 2). Specifically, EBSD proposed a "90-stay" on all litigation "while the parties mediated." (Letter from John

6

Palladino to Court at 1, Dkt. No. 26.)  This sequence of events does not show EBSD unilaterally prevented, or wrongfully hindered, mediation.  Rather, it shows Roschmann and EBSD could not agree on a mediation timeline in August.

In sum, because the parties have not attended mediation, and because Roschmann fails to show EBSD unilaterally prevented mediation, Roschmann's subcontract claim has not yet accrued.  To streamline this case, the Court will order the parties to mediate the subcontract claim.

B

EBSD next argues the Court should also order the parties to mediate Roschmann's liquidating agreement claim to encourage the efficient resolution of this case.[2]  The Court agrees.

The subcontract claim and the liquidating agreement claim involve similar, if not identical, supporting allegations.  For example, according to Roschmann, EBSD breached the subcontract by failing to (1) "remit to Roschmann [] retainage," (2) "approve and/or pay applications," (3) "coordinate work or adequately communicate" and (4) "approve and/or submit change orders."  (Compl. ¶ 93.)  And similarly, according to Roschmann, EBSD breached the liquidating agreement by failing to (1) "pay Roschmann its retainage," (2) "submit the required approvals," (3) "timely remit the agreed upon sums under the Liquidating Agreement" and (4) "approve the North Atrium G11 Curtain Wall change order."  (*Id.* ¶ 101.)  Read side-by-side, both the subcontract claim and the liquidating claim involve issues of retainage, invoice payments and the approval of change orders, applications and other things—and,

---

[2]     Claims under the liquidating agreement are not subject to the subcontract's condition precedent.  (Liquidating Agreement at 7.)

again, all these issues arise from the same construction project.  Plus, the parties *must* mediate the subcontract claim before they may litigate that claim in court.  It makes little sense for Roschmann and EBSD to mediate the subcontract claim but *not* mediate the liquidating agreement claim when both claims involve the same parties and nearly identical issues.

Roschmann's two counterarguments come up short.  It first emphasizes that the liquidating agreement doesn't have a condition precedent to litigation.  Maybe so.  But the Court has authority to order mandatory mediation under the local rules of civil procedure.

Roschmann also claims EBSD's request for mediation is "disingenuous and made in bad faith."  (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings and/or to Compel Mediation at 17.)  For support, Roschmann again argues it offered to mediate both of its claims with EBSD in August and EBSD rejected the offer.  The Court dispenses with that argument for the reasons previously explained.

*   *   *   *   *

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.